Filed 1/19/22  P. v. Garcia CA3

NOT TO BE PUBLISHED

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(El Dorado)

----

| | |
|---|---|
| THE PEOPLE, | C092334 |
| Plaintiff and Respondent, | (Super. Ct. No. S19CRF0079) |
| v. | |
| JOHN ROBERT GARCIA, | |
| Defendant and Appellant. | |

After the case went to the jury, the trial court discharged a juror for failing to deliberate, bias, and prejudging the case before deliberations.  The reconstituted jury convicted defendant John Robert Garcia of multiple sex crimes against a minor.  On appeal, defendant raises several arguments, including that the trial court abused its discretion in discharging the juror.  We agree, and reverse.  Consequently, we need not address defendant's other arguments on appeal.

1

BACKGROUND

A

Because we reverse defendant's conviction due to trial court error during jury deliberations, only a relatively brief recitation of the factual background of the case is necessary.

Born in November 2002, Doe spent most of his childhood living with his father in a two-bedroom, apartment.[1] Defendant, Doe's father's best friend, visited the apartment often. The two men regularly smoked marijuana and played video games in the living room.

Doe testified that, starting when he was about six years old, defendant sexually molested him "almost every time" defendant came to the apartment. Defendant would enter Doe's bedroom, have Doe lie down on his stomach, place one hand on Doe's back to hold him down, and place his other hand inside Doe's pants and underwear, touching Doe's vagina.

Around the time Doe turned 11, the molestations were less frequent; they ceased altogether when Doe was 13, because defendant stopped coming to the apartment after a dispute between defendant and Doe's father.

In addition to Doe, other witnesses for the prosecution at trial included: (i) Doe's best friend, who testified that—several years before the December 2019 trial—Doe told her about defendant sexually abusing him; (ii) Doe's mother, who testified that Doe first told her about the sexual abuse in September 2018; and (iii) the police detective who conducted a recorded interview with Doe in December 2018.

Defendant testified he never touched "[Doe's] or any child's vagina or private parts," never held Doe down, and never engaged in any inappropriate behavior with Doe.

---

[1] Doe explained at trial that he began identifying as male about one year before trial. Accordingly, when referring to Doe, we use the pronouns "he" and "his."

2

"They're definitely making these lies up to hurt me, basically, and make -- make me pay," he asserted. "It's absolutely wrong" for an adult to touch a minor sexually, he insisted.

Eight character witnesses testified on defendant's behalf, including his sister, his niece (who had two young daughters, and two teenage stepdaughters), and several long-time coworkers.

B

In June 2019, a prosecutor filed an information charging defendant with continuous sexual abuse of a minor under the age of 14 (Pen. Code, § 288.5, subd. (a); (count 1)),[2] and three counts of committing a lewd act by force on a minor under the age of 14 (§ 288, subd. (b)(1); counts 2-4).

Defendant's first trial ended in a mistrial, because the jury was unable to reach a unanimous decision.

During jury selection in the second trial, the prosecutor asked prospective jurors if they had any "strong feelings" or "any experiences with . . . personally being falsely accused of something." Juror No. 4 volunteered that, when he worked at Home Depot, a "young lady that was working there was a little bit lazy, and she didn't want to go as fast as [Juror No. 4]. There were always a lot of complaints, and [Juror No. 4] would go to [his coworker's] supervisor and say 'Look, you have to get her to go faster.' [¶] So long story short, [the coworker] and her supervisor got together and accused [Juror No. 4] of sexual harassment just to get [him] out of [his] position so she could have her way." After a "two-and-a-half-month investigation," the supervisor was fired "because they were false allegations."

Juror No. 4 made it onto the jury.

---

**2** Further undesignated statutory references are to the Penal Code.

Testimony began with Doe on the fourth day of trial, and the defense rested on the seventh day of trial. On multiple occasions when trial recesses occurred, the trial court admonished the jurors not to talk about the case and not to make up their minds about the case (CALCRIM No. 124).

On the eighth day of trial, December 18, 2019, the trial court gave final instructions to the jury (providing CALCRIM No. 3550,[3] among other instructions), and the jury began deliberating at 2:20 p.m. At 3:31 p.m., the jury asked to "review the court transcript of" the testimony of Doe's friend. The court reporter read back Doe's friend's testimony from 3:40 p.m. to 3:53 p.m., and the jury continued deliberating until 4:28 p.m.

Around 8:30 a.m. the next day, the jury resumed deliberations. Around 10:45 a.m., the jury asked the trial court to clarify certain jury instructions. Shortly after returning from the lunch break, the jury asked for a specific portion of Doe's testimony. From 1:42 p.m. to 2:43 p.m., the court reporter read back Doe's testimony, and the jury continued deliberating until around 3:20 p.m., when the foreperson sent a note indicating the jury was "having difficulty coming to a unanimous decision on all counts and would like advice on how to proceed."

At 4:05 p.m., and in response to the trial court's queries, the foreperson explained in a note that the jury took three votes "over [the previous day] and today with [the] same

---

[3] The instruction provides, in relevant part: "It is your duty to talk with one another and to deliberate in the jury room. You should try to agree on a verdict if you can. Each of you must decide the case for yourself, but only after you have discussed the evidence with the other jurors. Do not hesitate to change your mind if you become convinced that you are wrong. But do not change your mind just because other jurors disagree with you.

"Keep an open mind and openly exchange your thoughts and ideas about this case. Stating your opinions too strongly at the beginning or immediately announcing how you plan to vote may interfere with an open discussion." (CALCRIM No. 3550.)

result": 11-1 on count 1; and 10-2 on the other counts. The jury paused deliberations at 4:29 p.m. that day.

At 8:54 a.m. the next day (the third day of deliberations), the trial court sent CALCRIM No. 3551[4] to the jury, and asked the jury to read the instruction. Later that morning, the trial court also sent CALCRIM No. 3550 to the jury, explaining to the parties that it could hear the jurors talking, and that "[l]ate in the afternoon" of a previous day, the jurors "were definitely having a robust discussion, which is fine. [¶] But this morning there was a juror who yelled several times, and it required the bailiff to go in and get them to calm down. So I'm just going to tell them to refer . . . to Jury Instruction 3550 and follow it."

Around noon, the foreperson sent a note to the trial court stating: "There is a juror that has expressed a previous bias initially influenced their decision and has been holding the same position from early yesterday. The juror has been unwilling to re-examine their own views, consider new approaches or fresh perspective. The juror does not describe specific points of contention but a general unspecified feeling. The juror disclosed this

---

**4** The instruction provides, in relevant part: "Sometimes juries that have had difficulty reaching a verdict are able to resume deliberations and successfully reach a verdict [on one or more counts]. Please consider the following suggestions.

"Do not hesitate to reexamine your own views. Fair and effective jury deliberations require a frank and forthright exchange of views.

"Each of you must decide the case for yourself and form your individual opinion after you have fully and completely considered all of the evidence with your fellow jurors. It is your duty as jurors to deliberate with the goal of reaching a verdict if you can do so without surrendering your individual judgment. Do not change your position just because it differs from that of other jurors or just because you or others want to reach a verdict. Both the People and the Defendant are entitled to the individual judgment of each juror.

"It is up to you to decide how to conduct your deliberations. You may want to consider new approaches in order to get a fresh perspective." (CALCRIM No. 3551.)

bias during 'voire dire' [*sic*] and also stated did not want to be a juror to begin with. There was not a complete open dialog[ue] before said juror stated their opinion and since has not displayed having an open mind free from past bias from personal experiences."

This note was about Juror No. 4.

## C

### *Juror No. 9*

Under questioning by the trial court, the foreperson (Juror No. 9) said that the jury took its first vote around 10:00 a.m. the previous day (the second day of deliberations).

The trial court asked Juror No. 9, "And so after you took that initial vote, then was this juror deliberating?" Juror No. 9 replied: "Um, this juror was presenting their thoughts and ideas." Juror No. 9 explained: "We weren't really deliberating as far as arguing with each other as to points, you know. Everybody was expressing their thoughts and whatever."

The trial court queried: "So after you took the vote, everybody was expressing their thoughts and ideas, including this juror?"

Juror No. 9 replied: "No. Up to -- leading up to the vote, we were expressing how we individually felt." Juror No. 9 explained: "And then afterwards, after break," Juror No. 4 "expressed that [he] had already disclosed" what his "concerns were" "in . . . jury selection." "And . . . it was kind of weighing in on what [he was] thinking. And then one of the other jurors asked him if he could set that to the side, like follow [the trial court's] instructions," and he "said he could, but to the other jurors and myself, it does not seem that he has."

The trial court asked why Juror No. 9 thought Juror No. 4 had not "set aside th[e] bias that he disclosed." Juror No. 9 replied: "He has not changed his position at all or given any ground on any of his contention points and has also brought forth other past experiences to validate his positions."

6

The trial court sought to confirm what Juror No. 9 was saying: "So are you telling me that [Juror No. 4] is bringing in his personal experiences as it relates to the bias that he disclosed during jury selection?" Juror No. 9 replied: "Yes. And others." "He's brought other experiences to validate positions he's holding on other points, which we've tried to express that he should not be using those, only the evidence that's presented here."

The trial court responded: "Okay. So . . . he's discussing the evidence, and then he's discussing other things that were not part of the evidence in this trial?" "Yes," Juror No. 9 replied.

Moving on to another area of concern, the trial court asked Juror No. 9: "You also indicated that this juror is unwilling to reexamine their own views and consider new approaches or fresh perspectives. [¶] So what type of new approaches or fresh perspectives have you attempted?" Juror No. 9 answered: "I've asked directly what -- what his position was, and he explained that it was an in-total type of position, the he had a feeling in total. And that I asked him directly is there any part of that he has any concerns about specifically that we could discuss? Um -- and he just -- he continued to hold that it was the total sum that was leading him to where he was and was not willing to even discuss individual points because he said that it was just the overall. And that's been more than a day of trying to get to something that we can actually discuss."

The trial court asked: "So is he saying the overall evidence? Is he saying the overall evidence, plus his past experiences?" "That's really tricky," Juror No. 9 answered. "[H]e is relying on his past experiences to justify his belief of the overall picture." After further discussion, Juror No. 9 "clarif[ied]": "Based on what's happened, [Juror No. 4 was] using his past experience to influence his opinion."

*Juror No. 4*

The trial court asked Juror No. 4 if he was "talking about past personal experiences in your deliberations." "No," Juror No.4 replied. "I -- I -- we had a

7

discussion about that, and I said that I blocked everything out." "That all I concentrate on is on the testimony, here, what happened here in the case."

The trial court: "Okay. Only the testimony that happened here?"

Juror No. 4: "Yes. [¶] May I say something?"

The trial court: "Yeah."

Juror No. 4 explained that "[t]he only time [he] talked about an experience" was during jury selection "and [he] said about [the] one time that [he] was accused."

The trial court pressed Juror No. 4 whether he "talk[ed] about that . . . in the deliberations?" After giving several somewhat nonresponsive answers, Juror No. 4 ultimately replied: "Not me, but it was brought up to me by somebody else." "And I told them that I blocked all that out, that I -- that I was going to be impartial and just look at what -- you know, what was brought out here in the court."

After conferring with counsel, the trial court resumed questioning Juror No. 4.

The trial court: "So when you were expressing your opinion to the other jurors, were you only using the evidence that came in in this case?"

Juror No. 4: "Yes, only the evidence that was shown here."

The trial court: "Right. So nothing about your past experience?"

Juror No. 4: "Oh, gosh, no."

*Juror No. 7*

In light of the different recollections of Juror No. 9 and Juror No. 4 regarding deliberations, the trial court "want[ed] to hear from other jurors," and decided to "pick a random juror."

When asked by the trial court if "all the jurors" were "actually deliberating," Juror No. 7 replied: "Um, I think one is -- one has shut down from deliberating." Juror No. 7 explained that Juror No. 4 "talks about things and doesn't want to elaborate on those things. He's very vague, and wants people to have their opinions, he has his, and he's not willing to discuss them."

8

The trial court asked if Juror No. 4 was "bringing in his life experiences." "He has, yes," replied Juror No. 7.

Juror No. 7 explained that Juror No. 4 "sits there. And . . . not everyone is agreed on different things, and there's been talking back and forth. And with [Juror No. 4] . . . there's not talking back and forth."

The trial court: "[S]o when he does talk, is he talking about the evidence?"

Juror No. 7: "He has talked about the evidence, but on the most part, he does not talk about the evidence."

The trial court: "So what does he talk about if he's not talking about the evidence?"

Juror No. 7: "Mostly, I think it's been life experiences and relates it to his life experiences."

Later, the trial court asked how Juror No. 4 responds "when people try to engage him in the deliberations." Juror No. 7 answered: "Today, his response has been that he thought long and hard about it overnight and he's not willing to listen to any -- does not want to deliberate on it."

The trial court: "And what was he saying yesterday?"

Juror No. 7: "Yesterday, it was tied more to the life experiences, and . . . he was pretty stern on it yesterday."

*Juror No. 8*

After informing counsel it "want[ed] to hear from . . . at least one or two other jurors," the trial court questioned Juror No. 8, who said that all the jurors, except Juror No. 4, were deliberating.

Juror No.4 was making "[j]ust very broad, sweeping statements" and when other jurors "ask[ed] him to share why he had the position that he did," Juror No. 4 "would not share . . . in any level of detail." He "would just shut down and just refuse to discuss it . . . . That's not the spirit of deliberating," Juror No. 8 maintained. "When you

9

deliberate, you have to be able to articulate your reasons why and your position . . . . And [Juror No. 4] would just refuse to give any of that level of detail or . . . even have any factual base for his opinion, and so it made it impossible to understand his position."

Juror No. 8 described Juror No. 4 as being "very closed off, very almost shut down. When people were . . . talking about different salient points . . . he would sit just very, you know, arms crossed and back in his chair. Just eyes down. Didn't seem to want to hear any other points of view."

Juror No. 8 shared that Juror No. 4 also brought up "[h]ow . . . he tried to get off the jury with his . . . disclosure about . . . being wrongfully accused at the Home Depot. [¶] And . . . there was another statement that [Juror No. 4] made that [Juror No. 8] was really surprised by. And . . . [Juror No. 4] just said that he had his mind made up early," on "[d]ay three of the trial."

*Juror No. 1*

Juror No. 1, the last juror the trial court questioned, said everyone was deliberating "except for maybe" Juror No. 4. "[A]ll of us want to hear his side and his thoughts," Juror No. 1 explained, and "we want . . . him to explain to us certain thing, but he wasn't willing to. And he was just telling us that's just how he thinks, but without" explaining "how he came to that decision."

The trial court asked Juror No. 1, "do you know when [Juror No.4] came to his decision during the time of the deliberations?" Juror No. 1 answered that "after a couple of hours" of deliberations, the foreperson "asked us . . . before we left the first day, to just write down on little pieces of paper . . . initially what we thought," and "[t]hat's when" Juror No.4 told the other jurors "that he had decided on that." "[O]vernight we all thought about it. We started talking about it again."

The trial court asked whether Juror No. 4 "was . . . participating in that conversation?" Juror No. 1 replied: "Um, he was." "But . . . he wasn't willing to discuss with us how he came to that decision."

10

Juror No. 1 explained why the jury "had . . . the court reporter come back" at one point: Other jurors "were asking [Juror No. 4] if there[ ] [was] anything that he needed more . . . to really think about it," and "he . . . said that it might help if he listened to certain parts from the witnesses," and "so we did."

Juror No. 4 told to the other jurors that he arrived at "his opinion . . . [by] just overall listening to everything and looking at all the evidence." "And he wasn't willing to discuss the individual parts. He just said that's how he feels about it."

Juror No. 1 explained what might have lead Juror No. 4 to "close[ ] down" and not "want to talk to [the other jurors] anymore": "it started yesterday afternoon" (the second day of deliberations) when other jurors "started . . . asking for more information about how [Juror No. 4] came to his conclusion, and he . . . felt like we were attacking him."

In response to the trial court's query whether Juror. No. 4 "discuss[ed] anything . . . outside of the evidence," Juror No. 1 replied: "[S]ome of the jurors were asking him whether his previous experience had maybe clouded his judgment. And he said he doesn't think so, but then he also mentioned that . . . he was trying to be excused . . . from being a juror, and he didn't want to be here, and that's why he was telling . . . his past experience."

Juror No. 1 stated that, "at one point . . . [Juror No. 4] had mentioned that he had . . . heard this one part of the evidence and he had made up a certain decision already." But the "rest of" the jurors "were trying to tell him what [the trial court] told" the jurors, "that no, we have to listen to all the evidence and then evaluate everything as a whole and then come up with a conclusion." The trial court confirmed with Juror No. 1 that Juror No. 4 "indicated that, once he heard a part of the evidence, he had made his decision." "On certain things . . . yes," Juror No. 1 answered.

The trial court: "And that was before you deliberated?"

Juror No. 1: "Uh-huh."

11

Later, the trial court asked Juror No. 1 if, "when Juror Number 4 said that after he heard part of the evidence during the trial and . . . made up his mind . . . did . . . any other juror tell him that he had to consider all the evidence and also deliberate?" Juror No. 1 replied: "Well, we did. And he said he did." "And we told him, 'No, you didn't if you made your conclusion after just hearing a part of it.' " That exchange happened "[s]ometime in the afternoon" the previous day.

### D

In a written order containing its findings and conclusions, the trial court discharged Juror No. 4 "pursuant to . . . § 1089," and replaced him with an alternate juror.

The trial court discharged Juror No. 4, because he: (1) "was 'shut down,' expressing a fixed opinion early in the deliberations, refusing to speak to other jurors except in 'broad sweeping statements' "; (2) "used his previously disclosed bias to influence his decision in this case"; and (3) "formed an opinion during trial before the case was submitted to the jury."

Regarding the first reason, the trial court explained that Juror No. 4's "body language supported" other jurors' description of him being "shut down during deliberations." And "[b]ased on the testimony of the jurors, Juror #4 expressed a fixed conclusion at the beginning of deliberations." Further, multiple jurors indicated Juror No. 4 refused to discuss the case, making only " 'broad sweeping statements.' "

As for the second reason for the discharge, the trial court explained that Juror No. 7 and Juror No. 9 "indicated" Juror No. 4 "talked specifically about his false accusations of sexual harassment." Juror No. 9 indicated Juror No. 4 "continued to bring up his personal experience related to the false accusation at work, and other personal experiences early in the[ ] deliberations (during the first four hours)." And though Juror No. 4 "assured the Court several times he had put . . . aside [his] [ ]past experience[ ] and was only looking at the evidence," he "admitted he talked about it when a juror asked

12

him . . . about his past experience. . . . [¶] The foreperson and the other jurors did not believe Juror #4 was free from this previously disclosed bias."

Regarding the trial court's third reason, "Jurors #8 and #1 reported to the Court . . . Juror #4 formed his opinion prior to hearing all of the evidence or deliberating with the other jurors." The trial court determined that Juror No. 4's "conclusion"—that "he had . . . followed" instructions not to form an opinion about the case until the case was submitted to the jury—was "faulty." "It does not make sense Juror #4 admitted to making his decision during trial, before hearing all the evidence or deliberating with the other jurors, and he also asserts he followed instructions. Given Juror #4's veracity for the truth, the Court finds he did not follow these instructions: 124, 3550, 3551. The Court finds Juror #4 made his decision during the middle of trial in violation of . . . § 1122(b)."[5]

In a "conclusion" section of the order, the trial court expressed "concern[ ] about [Juror No. 4's] veracity, candor and reliability," and summarized its ruling: "The evidence shows Juror #4 considered a past experience of being falsely accused of sexual harassment to come to his opinion of this case, came to a decision on the third day of trial without considering all the evidence, could not articulate any evidence to support his opinion, refused to deliberate with the other jurors, shut down early in the deliberations and his veracity for the truth is unreliable."

E

The trial court discharged Juror No. 4 at 8:25 a.m., and the reconstituted jury reached its verdict at 1:42 p.m. that same day, finding defendant guilty on counts 1 and 4;

---

[5] Section 1122, subdivision (b), provides, in relevant part, that the jury "shall . . . be admonished by the court that it is their duty not to . . . form or express any opinion about the case until the cause is finally submitted to them."

13

not guilty on counts 2 and 3; but guilty of the lesser included offenses in counts 2 and 3 of committing a lewd act on a minor (§ 288, subd. (a)).

The trial court sentenced defendant to 26 years in state prison.

Defendant timely appealed.

DISCUSSION

Defendant argues the trial court abused its discretion in discharging Juror No. 4. We agree, as explained below.

"A trial court may discharge a juror at any time during trial if the court finds that the juror is 'unable to perform his or her duty.' (§ 1089.) A juror who refuses to deliberate may be removed 'on the theory that such a juror is "unable to perform [his or her] duty" within the meaning of Penal Code section 1089.' (*People v. Cleveland* (2001) 25 Cal.4th 466, 475 (*Cleveland*).)

"Although . . . court[s] review[ ] for abuse of discretion a [trial] court's ruling discharging a juror pursuant to section 1089 (*Cleveland, supra*, 25 Cal.4th at pp. 485-486), . . . such review involves a 'heightened standard [that] more fully reflects an appellate court's obligation to protect a defendant's fundamental rights to due process and to a fair trial by an unbiased jury' (*People v. Barnwell* (2007) 41 Cal.4th 1038, 1052 (*Barnwell*); see *Cleveland, supra*, at p. 488 (conc. opn. of Werdegar, J.)). Specifically, the juror's 'inability to perform' his or her duty 'must appear in the record as a demonstrable reality.' [Citations.]

"Under the demonstrable reality standard, a reviewing court's task is more 'than simply determining whether any substantial evidence in the record supports the trial court's decision.' [Citation.] 'A substantial evidence inquiry examines the record in the light most favorable to the judgment and upholds it if the record contains reasonable, credible evidence of solid value upon which a reasonable trier of fact *could* have relied in reaching the conclusion in question. Once such evidence is found, the substantial evidence test is satisfied. . . . [¶] The demonstrable reality test entails a more

14

comprehensive and less deferential review. It requires a showing that the court as trier of fact *did* rely on evidence that, in light of the entire record, supports its conclusion that [good cause for removing the juror is] established. It is important to make clear that a reviewing court does not *reweigh* the evidence under either test. Under the demonstrable reality standard, however, the reviewing court must be confident that the trial court's conclusion is manifestly supported by evidence on which the court actually relied. [¶] In reaching that conclusion, the reviewing panel will consider not just the evidence itself, but also the record of reasons the court provides.' (*Barnwell, supra*, 41 Cal.4th at pp. 1052-1053, citation omitted.)" (*People v. Armstrong* (2016) 1 Cal.5th 432, 450-451 (*Armstrong*).)

Here, the trial court discharged Juror No. 4 for (1) being "shut down," expressing a "fixed opinion early in the deliberations," and "refusing to speak to other jurors except in 'broad sweeping statements' "; (2) using a "previously disclosed bias to influence his decision in th[e] case"; and (3) "form[ing] an opinion during trial before the case was submitted to the jury."

"Applying th[e] heightened standard of review that governs our assessment of a trial court's decision to discharge a juror under section 1089, and based on our examination of the record as a whole, we conclude that the [trial] court abused its discretion in discharging Juror No. [4] because [his] inability to perform [his] duty as a juror does not appear in the record as a demonstrable reality." (*Armstrong, supra*, 1 Cal.5th at p. 451.)

I

1. *Deliberation*

It is "*not . . .* grounds for discharge, 'for a juror . . . to come to a conclusion about the strength of a prosecution's case *early in the deliberative process* and then refuse to change his or her mind.' " (*Armstrong, supra*, 1 Cal.5th at p. 453, italics added, quoting *People v. Bowers* (2001) 87 Cal.App.4th 722, 734.)

15

Here, Juror No. 9 said that Juror No. 4 "was presenting [his] thoughts and ideas" to the other jurors "leading up to the [first] vote." Juror No. 1 gave a similar version of events: "[A]fter a couple of hours" of deliberations, the foreperson "asked [the jurors] . . . before [they] left the first day . . . initially what [they] thought," and "[t]hat's when" Juror No. 4 told the other jurors "that he had decided on that."

Juror No. 1 also explained that, on at least one occasion when the jury asked that testimony be read back,[6] it was because Juror No. 4—in response to his fellow jurors' queries whether "there[ ] [was] anything that he needed more . . . to really think about" the case—said that "it might help if he listened to certain parts from the witnesses" again.

Thus, consistent with the trial court's findings on this issue, the record does indicate that Juror No. 4 decided the case *early* in deliberations. But as *Armstrong* makes clear, that is not grounds for discharge.

That Juror No. 4 provided only "broad sweeping statements" during deliberations was not proper grounds for discharge either.

" 'It is difficult enough for a trial court to determine whether a juror actually is refusing to deliberate or instead simply disagrees with the majority view. [Citations.] Drawing this distinction may be even more difficult for jurors who, confident of their own good faith and understanding of the evidence and the court's instructions on the law, mistakenly may believe that those individuals who steadfastly disagree with them are refusing to deliberate . . . .' [Citation.]" (*People v. Barton* (2020) 56 Cal.App.5th 496, 512 (*Barton*).)

Though other jurors may have been frustrated by Juror No. 4's apparent lack of desire or ability to explain in detail how he arrived at his conclusions, Juror No. 4 was

---

[6] The jury asked to review trial testimony the first time after deliberating for about one hour, and the second time after returning from lunch on the second day of deliberations.

16

under no obligation to do so. (See *People v. Cleveland, supra*, 25 Cal.4th at p. 485 ["The circumstance that a juror does not deliberate well or relies upon faulty logic or analysis does not constitute a refusal to deliberate and is not a ground for discharge"]; *Barton, supra*, 56 Cal.App.5th at pp. 512-513 ["[D]issatisfaction with the quality and content of [a holdout juror's] comments" and "the quality of [his] reasoning, does not support a finding that" the juror "was refusing to deliberate"].)

Nor was Juror No. 4's body language during deliberations,[7] proper grounds for discharge, as there is no suggestion he physically separated himself from the other jurors. (Cf. *Barton, supra*, 56 Cal.App.5th at pp. 515-516 ["While the Supreme Court in *Cleveland*[, *supra*, 25 Cal.4th at p. 485] held that a juror who separates herself physically from the remainder of the jury may suggest she is refusing to deliberate," a juror who "roll[s] her eyes and look[s] away when other jurors discuss [ ] the evidence," is not thereby refusing to deliberate, even if she is "heighten[ing] the tensions in the jury room"].)

Accordingly, the trial court abused its discretion by discharging Juror No. 4 for reaching a "fixed opinion early" in deliberations, and making only "broad sweeping statements" and being "shut down" during deliberations.

2. *Bias*

"A juror who is actually biased is unable to perform the duty to fairly deliberate and thus is subject to discharge." (*People v. Barnwell, supra*, 41 Cal.4th at p. 1051 (*Barnwell*).)

"Applying . . . different standards to the evaluation of different witnesses is" "bias" that renders a juror unable to fairly deliberate, because such an approach is

---

[7] Juror No. 8 provided the most detail on this point, describing Juror No. 4 as "sit[ting] just very, you know, arms crossed and back in his chair. Just eyes down. Didn't seem to want to hear any other points of view."

17

"contrary to the court's instructions and violative of the juror's oath of impartiality."
(*Barnwell*, *supra*, 41 Cal.4th at p. 1053 [explaining "[t]he totality of the evidence . . . support[ed] the trial court's evident conclusion that, more than simply disbelieving the testimony as given by these particular witnesses, [the juror] *judged their testimony by a different standard* because the witnesses were police officers" (italics added)].)

But a juror is permitted (expected even) to evaluate the evidence through the prism of their own life experiences.  (See *People v. Allen and Johnson* (2011) 53 Cal.4th 60, 76 (*Allen*) [recognizing a juror will "rel[y] on his or her life experience when evaluating evidence" italics omitted]; *id.* at p. 77 [" 'we must allow . . . jurors to use their experience in *evaluating and interpreting* . . . evidence,' " as " 'during the give and take of deliberations, it is virtually impossible to divorce completely one's background from one's *analysis* of the evidence' "].)

Thus, in *Allen*, the trial court abused its discretion by discharging a juror who "expressed no general bias against any group of which the witness . . . might have been a member," but "drew on his own personal life experience to conclude th[e] witness lacked credibility." (*Allen, supra*, 53 Cal.4th at p. 78.)

Here, the trial court discharged Juror No. 4 because the testimony of other jurors indicated that Juror No. 4 drew on his own personal life experience of being falsely accused of sexual harassment in evaluating the trial evidence.  Nothing in the record suggests Juror No. 4 expressed a *general* bias against those who claim to have experienced sexual harassment, sexual assault, or sexual abuse.

Accordingly, discharging Juror No. 4 for "bias" was an abuse of discretion.

3.  *Prejudgment*

"Although section 1122 requires jurors not to form an opinion about the case until it has been submitted to them, 'it would be entirely unrealistic to expect jurors not to think about the case during the trial . . . .' [Citation.]  A juror who holds a preliminary view that a party's case is weak does not violate the court's instructions so long as his or

18

her mind remains open to a fair consideration of the evidence, instructions, and shared opinions expressed during deliberations." (*Allen, supra*, 53 Cal.4th at p. 73.)

Here, the trial court referenced testimony by Juror No. 8 and Juror No. 1 that Juror No. 4 "formed his opinion prior to hearing all of the evidence or deliberating with other jurors." But the trial court *never heard from Juror No. 4 on this issue*, as it questioned Juror No. 8 and Juror No. 1 after it questioned Juror No. 4.

Because Juror No. 4 was not given an opportunity to respond to the charge that he went *beyond* a "preliminary view that [the prosecution's case was] weak" and actually *closed his mind* to a fair consideration of the evidence (*Allen, supra*, 53 Cal.4th at p. 73), and given other evidence that Juror No. 4 *did* participate in deliberations,[8] the record on which the trial court relied to discharge Juror No. 4 is incomplete and inadequate. (Cf. *Allen, supra*, at pp. 72-74 [the trial court abused its discretion in discharging a juror for prejudging the case because, inter alia, the juror's "participation in deliberations were consistent with his representation to . . . the court that he had not made up his mind before deliberations began," and *the trial court "did not ask [the juror] what he meant by his statement"*—"made at some point during deliberations" and as reported by other jurors—that " '[w]hen the prosecution rested, she didn't have a case' " (italics added)].)

Accordingly, the trial court's conclusion that Juror No. 4 prejudged the case does not appear in the record as a demonstrable reality. (See *Armstrong, supra*, 1 Cal.5th at p. 451.)

4. *Dishonesty*

In considering a challenge to a trial court's discharge of a juror pursuant to section 1089, "the reviewing panel will consider not just the evidence itself, but also *the record of reasons the court provides*. A trial court facilitates review when it expressly sets out

---

[8]     See our discussion of "Deliberation," *supra*.

19

its analysis of the evidence, why it reposed greater weight on some part of it and less on another, and the basis of its ultimate conclusion that a juror was failing to follow the oath. In taking the serious step of removing a deliberating juror the court must be mindful of its duty to provide a record that supports its decision by a demonstrable reality." (*Barnwell, supra*, 41 Cal.4th at p. 1053, italics added.)

Language in the trial court's order suggests it discharged Juror No. 4 due in part to a belief he was dishonest in answering questions posed to him by the trial court during the investigation into Juror No. 4's ability to perform his duty. (Cf. *Green v. White* (9th Cir. 2000) 232 F.3d 671, 676-678 [a juror's "pattern of lies" during voir dire, "introduced 'destructive uncertainties' into the fact-finding process," thereby "rais[ing] serious questions about his ability to impartially serve on a jury," compelling the appellate court to "presume bias" for purposes of a habeas corpus attack on a criminal conviction].) But because this was not clearly one of reasons the trial court provided for discharging Juror No. 4, and in light of the " 'less deferential review' " that applies here (*Armstrong, supra*, 1 Cal.5th at p. 450), we will not consider the issue now.

## II

The People concede that, if we determine the trial court improperly discharged Juror No. 4, "then the error was not harmless and reversal is warranted." We agree.

The record suggests Juror No. 4 "was the lone holdout juror who consistently held to h[is] belief [defendant] was not guilty and, had [ ]he remained on the jury, it is reasonably probable the case would have ended in a mistrial, a more favorable result for [defendant] than conviction. [(*People v. Bowers, supra*, 87 Cal.App.4th at pp. 735-736.)] Instead of a mistrial, [defendant] was convicted within hours after Juror No. [4] was discharged and the alternate juror joined the jury. There is no double jeopardy bar to retrial of the case. [Citations.]" (*Barton, supra*, 56 Cal.App.5th at p. 516.)

20

### III

Because we reverse the judgment due to the trial court's error in discharging Juror No. 4, we need not consider defendants other arguments on appeal challenging other aspects of the judgment.

### DISPOSTION

The judgment is reversed.

/s/
RAYE, P. J.

We concur:

/s/
HULL, J.

/s/
RENNER, J.